<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EAST COAST OFFICE SYSTEMS, INC., on behalf of themselves and all others similarly situated, :<br><br>Plaintiff,<br><br>v.<br><br>CITICORP VENDOR FINANCE, INC.,<br><br>Defendant. | Civ. No. 06-24 (GEB)<br><br>**MEMORANDUM OPINION** |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon defendant Citicorp Vendor Finance, Inc.'s ("Citicorp" or "Defendant") (1) motion to dismiss and for summary judgment; and (2) motion for sanctions. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The action was reassigned to the undersigned on October 19, 2006, and the Court, having read and fully considered all of the parties' submissions, has decided this matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78. For the reasons set forth below, the Court will grant Defendant's motion to dismiss, deny Defendant's motion for summary judgment as moot, and deny Defendant's motion for sanctions.

**I.     BACKGROUND**

Plaintiff East Coast Office Systems, Inc. ("East Coast" or "Plaintiff"), a Connecticut

corporation with its principal place of business located in Milford, Connecticut, is a retail seller of photocopy, facsimile, and other business machines.  (Compl. ¶¶ 1, 4.)  Defendant, a Delaware corporation with its principal place of business located in Mahwah, New Jersey, is in the business of selling these types of business machines to retailers such as Plaintiff.  (*Id.* ¶ 5.)  This action is based on allegations concerning Defendant's sale of such machines to Plaintiff.

According to the Complaint, Plaintiff purchased used machines from Defendant "for resale . . . ."  (*Id.* ¶ 1.)  Plaintiff alleges that, in selling used machines to resellers such as Plaintiff, Defendant "improperly included sales tax in the calculation of the charges . . . ."  (*Id.*) Plaintiff claims that the invoices containing the charges "were false and misleading because Defendant has either collected monies under the deception that it was sales tax without remitting it to the proper taxing authorities and/or inflated the value of the dealer discount by the amount of sales tax represented for each transaction."  (*Id.* ¶ 17.)  According to the Complaint, "[b]y including sales tax in each upgrade transaction, Defendant misled Plaintiff . . . into paying more for each purchase and induced [it] to enter into transactions upon false pretenses."  (*Id*. ¶ 18.)

Plaintiff filed the Complaint on January 4, 2006.  It asserts two claims:  (1) violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56.8-1 *et seq.* ("CFA" or "Act"); and (2) unjust enrichment.  (*Id.* ¶¶ 24, 31.)  Plaintiff asserts these claims on behalf of itself, and seeks to assert them on behalf of a putative class of resellers who have also been charged sales tax by Defendant on used machines that they purchased.  (*Id.* ¶ 6.)

On March 2, 2006, Defendant filed the present motion to dismiss the complaint pursuant to Rule 12(b)(6) or, alternatively, for summary judgment pursuant to Rule 56.  On May 4, 2006, Defendant filed a motion seeking sanctions against Plaintiff and its counsel pursuant to Rule 11.

On October 19, 2006, this case was reassigned to the undersigned. The parties have fully briefed the two motions, and the Court will now address those motions.

## II. DISCUSSION

### A. Defendant's Motion to Dismiss and for Summary Judgment

Defendant seeks dismissal of Plaintiff's claims or, alternatively, summary judgment of those claims in Defendant's favor. With respect to its motion for summary judgment, Defendant argues that summary judgment is appropriate at this stage because the parties have already engaged in extensive discovery in a nearly identical case in a Connecticut state court ("Connecticut Action"), which case Plaintiff withdrew prior to the filing of this action. (Def.'s Br. 5-6.) Defendant argues that the factual record established in the Connecticut Action is sufficiently developed for summary judgment purposes. Plaintiff, however, argues that Defendant's motion for summary judgment is premature because the parties never completed fact discovery in the Connecticut Action, and they have not completed discovery in this case. (Pl.'s Opp. Br. 5-7.)

For the reasons discussed below, the Court will grant Defendant's motion to dismiss, thereby rendering the motion for summary judgment moot. The Court will therefore address the parties' arguments concerning Defendant's motion to dismiss only.

#### 1. Standard of Review for Motions to Dismiss

In considering a Rule 12(b)(6) motion to dismiss, a court "must accept all well pleaded allegations in the complaint as true and view them in the light most favorable to plaintiff."

*Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir.), *cert. denied*, 474 U.S. 935 (1985). *See also Langford v. City of Atl. City*, 235 F.3d 845, 847 (3d Cir. 2000). The court may dismiss a complaint only if the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

### 2. Plaintiff's CFA Claim

#### a. Requirements for CFA Claims

The CFA provides, in relevant part, that:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J. Stat. Ann. § 56:8-2. "Courts have emphasized that like most remedial legislation, the Act should be construed liberally in favor of consumers." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15-16 (1994).

"[T]he [CFA] was 'aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate.'" *J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1272 (3d Cir. 1994) (quoting *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 270 (1978)). "[T]he CFA seeks to protect consumers who purchase 'goods or services generally sold to the public at large.'" *Cetel v. Kirwan Fin. Group,*

*Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Marascio v. Campanella*, 298 N.J. Super. 491, 499 (App. Div. 1997)).  "'[T]he entire thrust of the Act is pointed to products and services sold to consumers in the popular sense.'"  *Id.* (quoting *Arc Networks, Inc. v. Gold Phone Card Co.*, 333 N.J. Super. 587, 589 (Law Div. 2000)).  "Thus, the CFA 'is not intended to cover every transaction that occurs in the marketplace[,]' but, rather, '[i]ts applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself.'"  *Id.* (quoting *Arc Networks*, 333 N.J. Super. at 590).

"[C]ourts have held that 'it is the character of the transaction rather than the identity of the purchaser which determines if the [CFA] is applicable.'"  *Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F. Supp. 2d 394, 400 (D.N.J. 2000) (quoting *J & R Ice Cream*, 31 F.3d at 1273).  "The Act does not exclude business entities from its protection so long as they are 'consumers.'"  *City Check Cashing, Inc. v. Nat'l State Bank*, 244 N.J. Super. 304, 309 (App. Div. 1990) (citations omitted).  "However, to be a consumer respecting the transaction in question, the business entity must be 'one who uses (economic) goods, and so diminishes or destroys their utilities.'"  *Id.* (quoting *Hundred East Credit Corp. v. Eric Schuster Corp.*, 212 N.J. Super. 350, 355 (App. Div. 1986)).

"[C]ourts have consistently concluded that purchasers of wholesale goods for resale are not consumers within the meaning of the [CFA]."  *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 179 F.R.D. 450, 469 (D.N.J. 1998).  *See also Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 992 F. Supp. 709, 716 (D.N.J. 1998) (holding that "commercial resellers such as plaintiffs," who were retail sellers of engine treatment products in competition with the defendants' products, "do not qualify as 'consumers'" pursuant to the CFA); *Windsor Card*

*Shops, Inc. v. Hallmark Cards, Inc.*, 957 F. Supp. 562, 567 n.6 (D.N.J. 1997) (holding that the plaintiff was not a consumer protected by the CFA because it "purchased the goods at wholesale to sell to its store customers" and "did not diminish or destroy the utility of the goods"); *City Check Cashing*, 244 N.J. Super. at 309 (holding that the plaintiff was not a consumer protected by the CFA because "plaintiff essentially was buying cash from defendant at wholesale to sell to its check-cashing customers at retail" and "did not diminish or destroy the utility of the cash"). *See also Fink v. Ricoh Corp.*, 365 N.J. Super. 520, 572 (Law Div. 2003) ("[P]urchasers of goods at wholesale who resell them at retail are not protected by the [CFA]") (citing *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 560-61 (D.N.J. 2002)); *Arc Networks*, 333 N.J. Super. at 592 (dismissing CFA counter-claim brought by a retailer of prepaid phone cards because "[its] purpose in contracting for [the supplier]'s services was to resell those services to purchasers of its phone cards").

### b. Plaintiff's CFA Claim Should Be Dismissed

Plaintiff has failed to state a claim pursuant to the CFA in two respects. First, Plaintiff is not a "consumer" for purposes of the CFA because it purchased machines from Defendant in order to resell them. According to the Complaint, Plaintiff and members of the putative class "purchased said machines for resale from Defendant . . . ." (Compl. ¶ 1.) The Complaint further alleges that "Plaintiff and Class Members, *as resellers*, have been subject to the unlawful inclusion of sales tax on all purchases from Defendant . . . ." (*Id.* ¶ 22.) (emphasis added). According to Plaintiff's own allegations, it purchased the machines in question for resale, and is therefore not a "consumer" for purposes of the CFA. *See Lithuanian Commerce*, 179 F.R.D. at

6

469 (observing that "courts have consistently concluded that purchasers of wholesale goods for resale are not consumers within the meaning of the [CFA]").

Second, Plaintiff has failed to allege any facts showing that the machines in question were "generally sold to the public at large." *See Cetel*, 460 F.3d at 514 ("'[T]he entire thrust of the Act is pointed to products and services sold to consumers in the popular sense'") (quoting *Arc Networks*, 333 N.J. at 589). *See also Bracco Diagnostics*, 226 F. Supp. 2d at 561 (dismissing a pharmaceutical product manufacturer's CFA claim against its distributor for improper accounting practices because "[the defendant] does not 'sell' those accounting, tracking, and reporting functions to the public, either directly or indirectly," which functions were merely "incidental to a contract for the sale of products between a manufacturer and a wholesaler"). Plaintiff alleges only that Defendant sold used machines to certain resellers of business machines – it does not allege facts showing that the machines were "sold to consumers in the popular sense." *Cetel*, 460 F.3d at 514. For these reasons, Plaintiff's CFA claim, as set forth in the Complaint, should be dismissed.

In its brief, Plaintiff characterizes the alleged transactions in a different manner than it does in the Complaint. Plaintiff describes its business relationship with Defendant in the following manner:

> East Coast sells copier and fax machines . . . to various businesses in the tri-state area. . . . Citicorp provides financing for these transactions, thereby enabling [East Coast]'s customers to lease the equipment and to upgrade to newer equipment prior to expiration of the leasehold terms. . . . When one of East Coast's customers wishes to lease a copier or fax machine, Citicorp, as the financing company, finances the transaction. East Coast initiates and assists in the application process on behalf of the customer.

(Pl.'s Opp. Br. 3.) Plaintiff's claims concern the termination of these leases prior to their

7

expiration, and the choice by the lessees to "upgrade" to newer machines. (*Id.* 4.) According to Plaintiff:

> When businesses desire to upgrade their copier or fax machine prior to expiration of the leasehold term, Citicorp provides an 'upgrade' service to [East Coast]. . . . Under these service contracts, Citicorp permits East Coast's customers to upgrade to a newer machine, under a new lease agreement, and permits East Coast and its client to terminate the old lease for a fee. East Coast pays an 'upgrade' fee to Citicorp to terminate the old lease. In essence, [East Coast] buys out the remainder of the lease in exchange for placing its customers into a new Citicorp lease. As part of that process, the customer returns the old equipment to East Coast where, in most cases, East Coast refurbishes and resells the machines.

(*Id*.) Plaintiff claims that Defendant "is in the business of financing the lease of copiers," and that "Plaintiff 'consumes' the upgrade service itself – namely the opportunity to place a customer into a new lease with a newer machine prior to the end of the original lease." (*Id.* 13-14.)

Despite Plaintiff's re-characterization of the alleged transactions in its briefs, the Court finds it appropriate to dismiss its CFA claim. In deciding Defendant's motion to dismiss, the Court must refer to the allegations set forth in the Complaint, not the assertions contained in Plaintiff's briefs. *See e.g. Angelastro*, 764 F.2d at 944 (stating that a court "must accept all well pleaded *allegations in the complaint* as true and view them in the light most favorable to plaintiff") (emphasis added). Those allegations, for the reasons explained above, do not support a claim pursuant to the CFA.

Even if the Court accepted Plaintiff's re-characterization of the alleged transactions, Plaintiff's assertions would fail to support its claim because the asserted facts do not describe services that were "generally sold to the public at large." *Cetel*, 460 F.3d at 514. Plaintiff claims that Defendant "is in the business of financing the lease of copiers," and that "Plaintiff 'consumes' the upgrade service itself – namely the opportunity to place a customer into a new

lease with a newer machine prior to the end of the original lease." (Pl.'s Opp. Br. 13-14.) According to Plaintiff's own description, then, Defendant only sold such upgrade services to vendors who already used Defendant's financing services to lease machines to customers. Such customers – namely, vendors with pre-existing financing arrangements with Plaintiff – do not constitute "consumers in the popular sense." *Cetel*, 460 F.3d at 514. *See also Windsor Card Shops*, 957 F. Supp. at 567 n.6 (holding that "[f]inancial planning, store planning, and merchandising services [incidental to the plaintiff's purchase of greeting cards] are not services that are sold to the general public"). The Court will therefore dismiss Plaintiff's CFA claim.

### 3. Plaintiff's Unjust Enrichment Claim

#### a. Requirements for Unjust Enrichment Claims

"Under New Jersey law, '[t]he constructive or quasi-contract is the formula by which enforcement is had of a public duty to prevent unjust enrichment or unconscionable benefit or advantage.'" *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226 (3d Cir. 1983) (quoting *West Caldwell v. Caldwell*, 26 N.J. 9, 29 (1958)). "Quasi-contractual obligations are imposed by the law for the purpose of bringing about justice." *Id.* "Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law." *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000). "Quasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties." *Id.*

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN*

*Realty Corp.*, 135 N.J. 539, 554 (1994). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* "Such liability will be imposed only if 'plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred.'" *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004) (quoting *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 109 (App. Div. 1966)).

### b. Plaintiff's Unjust Enrichment Claim Should Be Dismissed

Plaintiff has not alleged facts sufficient to state a claim of unjust enrichment. Plaintiff has failed to allege that it conferred a benefit to Defendant in purchasing the machines in question, or that it expected payment from Defendant for any such benefit. *VRG*, 135 N.J. at 554. Plaintiff alleges only that, "[a]s a result of Defendant's unconscionable commercial practices and its suppression and concealment of material information, . . . Defendant has been unjustly enriched by the receipt of monies wrongfully obtained from Plaintiff and Class Members." (Compl. ¶ 31.) Plaintiff has failed to allege facts that would satisfy the elements of a claim of unjust enrichment, and the Court will therefore dismiss that claim. *See Prima v. Darden Rests., Inc.*, 78 F. Supp. 2d 337, 355 (D.N.J. 2000) (dismissing the plaintiff's unjust enrichment claim because "[t]he plaintiff has not alleged that she performed or otherwise conferred a benefit on the defendants under a contractual or quasi-contractual relationship with the expectation of [remuneration]").

**B.     Defendant's Motion for Sanctions Pursuant to Rule 11**

**1.     Requirements for Imposing Sanctions Pursuant to Rule 11**

Federal Rules of Civil Procedure Rule 11 was designed to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation . . . ." *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1090-91 (3d Cir. 1988) (internal quotations omitted). Rule 11(b) provides that:

> By presenting to the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b).

The Third Circuit Court of Appeals has stated that for Rule 11 sanctions, the question is whether the conduct was "reasonable[] under the circumstances." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (citations omitted). In this context, reasonableness has been defined as "an objective knowledge or belief at the time of filing of a challenged paper that the claim was well-grounded in law and fact." *Id.* (internal quotations

omitted).  Furthermore, bad faith is not required.  *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) (citation omitted).

### 2. Defendant's Motion for Sanctions Against Plaintiff and Its Counsel Should Be Denied

Defendant argues that Plaintiff's counsel failed to engage in a reasonable pre-filing inquiry in two respects.  First, Defendant argues that Plaintiff's counsel failed to determine whether Plaintiff's allegations that it suffered an "ascertainable loss" had sufficient evidentiary support.  (Def.'s Br. in Support of Mot. for Sanctions 27, 29-31.)  Second, Defendant argues that:

> [a pre-filing inquiry] would have revealed that East Coast's alleged "purchase" of the [business machines] was solely for the purpose of resale, and the [alleged invoices] at issue in this action are transmitted, not to the public at large, but only to the single originating vendors who are, likewise, the only parties who are given the opportunity to "purchase" such equipment.

(*Id.* 17-18.)  Defendant argues that, "[h]ad Plaintiff's Counsel performed the reasonable pre-filing inquiry required by Rule 11, it would have been patently obvious that [Plaintiff's CFA claim] was not warranted by existing law."  (*Id.* 18.)

The Court finds both arguments unpersuasive.  With respect to Defendant's first argument, the parties have not completed fact discovery in either the prior Connecticut Action or the present case.  The Court is therefore unable to evaluate Defendant's argument that there is no evidentiary support for Plaintiff's claim that it suffered "ascertainable loss."

The Court is also unpersuaded by Defendant's argument that Plaintiff's counsel failed to engage in a reasonable pre-filing inquiry concerning CFA claims brought by resellers.  Courts have acknowledged the lack of clarity in the case law concerning CFA claims brought by

12

business entities.  *See e.g. Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 508-09 (D.N.J. 2000) (observing that "[t]he parties have presented multiple authorities on both sides of the issue [of whether the CFA applied to a transaction between two commercial entities]," and that "their results are contrary" but "not inconsistent"); *Elec. Mobility*, 87 F. Supp. 2d at 399 (observing that "the question of whether New Jersey courts would recognize a claim under the Act brought by one commercial entity against another had been labeled as a 'morass,'" and that "[s]ubsequent New Jersey case law . . . has effectively eroded the reasoning of these cases").  Although "courts have consistently concluded that purchasers of wholesale goods for resale are not consumers within the meaning of the [CFA]," *Lithuanian Commerce*, 179 F.R.D. at 469, "it is the character of the transaction rather than the identity of the purchaser which determines if the [CFA] is applicable."  *J & R Ice Cream*, 31 F.3d at 1273.  In light of the transaction-dependent nature of evaluating CFA claims, the Court finds that Plaintiff's Complaint was not "frivolous, legally unreasonable, or without factual foundation," *Napier*, 855 F.2d at 1090-91, and Defendant's motion for Rule 11 sanctions is therefore denied.

### III.    CONCLUSION

For these reasons, Defendant's motion to dismiss is granted, Defendant's motion for summary judgment is denied as moot, and Defendant's motion for sanctions is denied.  An appropriate form of order is filed herewith.

Dated:   November 9, 2006

                                                   s/ Garrett E. Brown, Jr.
                                            GARRETT E. BROWN, JR., U.S.D.J.